CITY OF KIRKWOOD, etc., Appellant, v. JOSEPH E.
MARTIN et al., Respondents, and CITY OF KIRK-
WOOD, etc., Appellant, v. WYATT SHALICROSS
et al., Respondents.*

St. Louis Court of Appeals. Opinion filed March 2, 1926.

1. **MUNICIPAL CORPORATIONS:** Street Improvements: Burdening
Private Property With Cost: Proceedings Must Conform Strictly to
Law. Proceedings whereby private property is burdened with the
cost of street improvements must conform strictly to law.

2. ———: ———: St. Louis County: Cities of Fourth Class: Improv-
ing Street at Its Own Expense: Reimbursed by County: Special Tax
Bills: Issued Against Abutting Property for Work: Collection Barred.
A city of the fourth class situated in St. Louis county, having
improved a street or roadway "at its own expense," and afterwards
reimbursed by the county for the cost of the work, under the Act
of April 17, 1911, p. 362 (sections 10755 to 10766, inclusive, Re-
vised Statutes 1919) cannot levy and collect special assessments on
abutting property for a second payment, though the improvement
was begun in 1917 when section 9411, Revised Statutes 1909, as
amended by the Laws of 1917, p. 384, was in effect, which section
as amended is now section 8510, Revised Statutes 1919, authorizing
a city to proceed under section 8514, Revised Statutes 1919, to im-

(490)

prove a street at its own expense when no bids are received, the special road and bridge fund created by the Act of April 17, 1911 can be applied by the county court only to road and bridge purposes.

3. **ELECTION OF REMEDIES: Election: Defined.** An election, in its legal sense, is defined to be a choice of the rights of one of two things, to each one of which the party choosing has the right, but both of which he cannot have, and when the party obtains full satisfaction from one source, his cause of action ends, and he can not assert it further.

*Corpus Juris-Cyc. References; Election, 19 C. J., p. 1258, n. 63. Election of Remedies, 20 C. J., p. 5, n. 30. Municipal Corporations, 28 Cyc., p. 970, n. 37; p. 1144, n. 46.

Appeals from the Circuit Court of St. Louis County.— *Hon. G. A. Wurdeman,* Judge.

AFFIRMED.

*Robert C. Powell* for appellant.

(1) Under our statutes, original street improvements could be made by a city of the fourth class in only three ways: (a) Out of the proceeds of a bond issue (sec. 9404, R. S. 1909; now sec. 8503, R. S. 1919). (b) Under the Act of 1911 (pages 362-365; now secs. 10755-10766, R. S. 1919). (c) By the usual tax-bill method (secs. 9405, 9411 and 9414, R. S. 1909; now secs. 8504, 8511, 8514, R. S. 1919). (2) Under the tax-bill method, (c), supra, if no bids are received the statute provides that the city may proceed with the improvement "at its own expense," and further provides that each lot abutting the improvement shall be liable for its proportionate cost, and special tax bills shall be issued for the assessment against each lot, which tax bills shall be as valid as other tax bills and shall be collected in the same way. Sec. 9414, R. S. 1909; now sec. 8514, R. S. 1919. (3) In the tax-bill method it makes no difference out of which "fund" the city pays its bills for such improve-

ment "at its own expense," if it has money available for such purpose, or out of which other "fund" it reappropriates, or transfers to, or gets back into the first fund, as a matter of bookkeeping or budget, the money thus advanced. The mere use of, drawing on, or appropriation from one fund to another does not constitute a "payment" or extinguishment of the tax bills to relieve the property from assessment.

*James P. Maginn* for respondents.

(1) The answers of the defendants in the cases at bar carry them to the equity side of the court. Hubbard v. Dehlke, 210 S. W. 652, 277 Mo. 516 (citing Lee v. Conran, 213 Mo. 404, 111 S. W. 1151; Brandt v. Bente, 177 S. W. 377); Toler v. Edwards, 249 Mo. 158, 159; citing many· Missouri cases as showing the rule that a prayer for equitabe relief is essential to make pleaded equitable defenses change an action at law into a suit in equity, and especially, Shaffer v. Detie, 191 Mo. 388. (2) Section 22, Article X, Constitution of Missouri, R. S. 1919, Vol. 1, p. 162, entitled, "Special Road and Bridge Tax," authorizes the county court of St. Louis county to levy and collect, in the same manner as State and county taxes are collected, "a special tax not exceeding twenty-five cents on each $100 valuation, to be used for road and bridge purposes, but for no other purpose whatever." (3) The Act of April 17, 1911, Laws Missouri, pp. 362 et seq., creates a "special road fund" (Sec. 3, p. 363) and provides "such fund shall be expended solely in the construction or reconstruction of the roads and streets declared by this act to be general public roads within such municipal corporation, except as herein otherwise provided." The funds derived from the levy made under section 22, Article X of the Constitution, are public funds, collected for a special purpose. Green City v. Martin, 237 Mo. 474. The county court can apply them to road and bridge purposes only. Carthage

Special Road District v. Ross, 270 Mo. 76. (4) The
county court, under the Act of 1911, at the instance, re-
quest and demand of the city of Kirkwood, in May and
July, 1918, paid in full the construction of Monroe avenue
improvements to the city as a general public road out of
the "special road fund" in the county treasury, and the
city of Kirkwood accepted the payment in full satisfac-
tion of its expenditures out of its general revenue and
thereby, in legal effect, abandoned its pending proceed-
ings to collect them by the special tax-bill method, and also
was, in law, thereafter powerless to enact a valid ordi-
nance and to issue special tax bills to collect its said
expenditures a second time. Sec. 8514, R. S. 1919. (5)
Proceedings whereby private property is burdened with
the cost of street improvements, being *in invitum,* must
conform strictly to law. Brosnahan v. Pitcher, 133
Mo. App. 660; Rackliff v. Peters, 136 Mo. App. 168;
City of Brownsville ex rel. Cosgrove v. Stephens, 141
S. W. 1111 (reversing 95 S. W. 314); Cushing v. Powell,
130 Mo. App. 576; City of Chillicothe ex rel. Meek v.
Henry, 136 Mo. App. 468; City of Poplar Bluff v. Bacon,
144 Mo. App. 476. (6) The county court, knowing that
the city of Kirkwood had undertaken, at its own expense,
out of its general revenue fund, to complete this improve-
ment of Monroe avenue, under plans and specifications
prepared by its City Engineer, and under his superin-
tendence, and having before it the certificates of the
said City Engineer, and also of its own County High-
way Engineer, as to the work performed, and the truth
and justice of the accounts of the city, and the purpose
and spirit of the Act of 1911, now secs. 10755 to 10766,
R. S. 1919, Vol. III, pp. 3357, 3358, 3359, considered these
facts a substantial compliance therewith and issued its
warrants to the city of Kirkwood, as under section 10763
(sec. 9 of the act) it would have done to a contractor
had the provisions of the act been literally followed (tes-
timony of William Elbring, Abs., pp. 37 to 41). (7)
The doctrine is well settled in Missouri "that the demand

of a creditor, which is paid with the money of a third person, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished.'' Grady v. O'Reilly, 116 Mo. 346, citing Bunn v. Lindsay, 95 Mo. 395; Evans v. Halleck, 83 Mo. 378; Price v. Courtney, 87 Mo. 395; Klerman v. Gieselman, 114 Mo. 437. Also, same doctrine reaffirmed in recent case. Jacobs v. Webster et al., 199 Mo. App. 608, 205 S. W. 531; Cape Girardeau Co. v. Estate of Hamil, 153 Mo. App. 404. To the same effect, 30 Cyc., p. 1221, 39 Century Digest, Title, Payment, sec. 136; Crumlish v. Central Imp. Co., 38 W. Va. 390 (s. c.), 45 Am. St. Rep. 872, note, 23 L. R. A. Annotation 120, citing Wade v. Beldmeir, 40 Mo. 286; Wolff v. Walter et al., 56 Mo. 295; Wooldridge v. Scott, 69 Mo. 669; Demeter v. Wilcox, 115 Mo. 634; 21 Ruling Case Law, sec. 26, p. 32; Harrison v. Hicks, 1 Port. Ala. 423; 27 Am. Dec. 638, 100 A. S. R. 397, and is a complete defense in a subsequent action against the debtor. Leavitt v. Morrow, 6 Ohio St. 71, 67 Am. Dec. 334; Gray v. Herman, 75 Wis. 453, 44 N. H. 248; 6 L. R. A. 691. Payment by a third person discharged the lien of special assessment, 158 Ill. 52, and even if made by mistake, held, in Hudson v. People ex rel. McKee, 188 Ill. 103, 58 N. E. 964, and repayment by the public corporation does not reinstate the lien of the assessment. Ibid. Although there are some early authorities to the contrary, it is now well settled that payment of a debt by a stranger, although without the debtor's request, if accepted as such by the creditor, discharges the debt so far as the creditor is concerned. 30 Cyc., Payment, p. 1221 D, notes 98, 99, and cases cited. (8) The city, having and claiming to have two sources of reimbursement and repayment of its expenditures open to it, to-wit, the abutting ground by special tax bills, as for a corporate street, and also the Special Road and Bridge Fund, under the Act of 1911, supra, in the county treasury, elected to obtain repayment and was repaid in full by the county court

out of said fund, and, *ipso facto,* ceased to have any claim or basis for a claim against the abutting ground of the defendants on which to levy special tax bills, under the doctrine of *quasi-*estoppel (20 Corpus Juris, p. 2; Election of Remedies, sec. 1 and notes a, p. 4, sec. 2-B). An election once made between coexisting remedial rights which are inconsistent is irrevocable, conclusive and constitutes an absolute bar. Brown v. Howard, 264 Mo. 466, cited in 20 Corpus Juris, p. 38, par. A, sec. 33, note 61; also Tower v. Compton Hill Imp. Co., 192 Mo. 379, citing Bigelow on Estoppel (5 Ed.), 673, and many Mo. cases; Smoot v. Judd, 184 Mo. 508; MacMurray-Judge Co. v. St. Louis, 138 Mo. 608; Smith v. Berryman, 173 Mo. App. 148, and great numbers of authorities in many states, and citing 31 Mich. 309, approving Robb v. Vos, 155 U. S. 13, quoting Issenhuth v. Kirkpatrick, 258 Fed. 293, 296. The same facts may create two or more remedial rights, each of which is inconsistent with the other, and all of which exist in a state of suspension until one of them is selected; but when he makes his choice, the right chosen is preserved and becomes the only one available to him, while all the rest are dissolved and cease to exist. Ibid., p. 39, Oregon Mill, etc., Co. v. Hyde, 87 Ore. 163, 173; Rowell v. Smith, 123 Wis. 510, 522. (9) A city council has both ministerial and legislative powers. In the exercise of its legislative powers, it is not subject to judicial control, but in the exercise of its administrative or ministerial powers it is. And it cannot exempt or shield itself from judicial control by covering or clothing a vulnerable ministerial act with the form used to include a legislative act. State ex rel. v. Gates, 190 Mo. 541, 1. c. 558, citing and quoting from (among other Missouri cases) Donahoe v. Kansas City, 136 Mo. 1. c. 665, in which the Supreme Court quoted with approval from McKenna v. St. Louis, 6 Mo. App. 320. Ely v. St. Louis, 181 Mo. 723; Ruppenthal v. St. Louis, 190 Mo. 225; Aurora Water Co. v. Aurora, 129 Mo. 574. (10) There is not a scintilla of evidence tend-

ing to show that the county court loaned the money to the city of Kirkwood. The whole record conclusively shows payment of its account.

DAUES, P. J.—The above cases, by agreement of counsel, were consolidated, same being identical except as to the names of the respondents, and are treated as one case, to-wit No. 19351.

This is an action on special tax bills for the improvement of a roadway in the city of Kirkwood, Missouri, the cause having been heard in Division No. 2 of the circuit court of St. Louis county, where judgment was rendered in favor of defendants, and plaintiff has appealed.

The facts are not in dispute and the pleadings may be summarized as follows:

Plaintiff's verified petition alleges that the city of Kirkwood is a city of the fourth class, and that the defendants owned the real estate described in the petition; that the Board of Aldermen of said city adopted a resolution declaring it necessary to improve, according to plans and specifications, a certain roadway known as Monroe avenue in said city and upon which defendants' property abutted. The resolution provided that the work should be done at the cost of the property owners. By subsequent ordinance the improvement was provided for and special tax bills were ordered issued against the abutting property to pay for the improvement when same was to be completed. It is then alleged that notices to contractors were published asking for bids on the engineer's estimate of the work; that no bids were received, whereupon the city passed another ordinance authorizing and directing the City Engineer to grade macadamize and otherwise improve said road; that the City Engineer did the work under the ordinance, keeping an accurate account of the cost, which was reported to the Board of Aldermen and which body duly passed an ordinance levying a special assessment for this improvement and authorizing the tax bills to be issued. The tax

bills were duly issued, made out to the City Engineer for the use of the city of Kirkwood. The tax bills are incorporated in the petition, and judgment is asked for the amount of the tax bills, together with interest and costs.

The answer is, first, a general denial, and sets up further defenses which we fain would summarize but which because of the character of this defense, we find it necessary to set same out, as such contains a complete history of the proceeding and cites the many statutory provisions applicable for determination of this case. Such answer is as follows:

"Defendants allege that at all the times mentioned in said petition, that certain Act of the General Assembly of the State of Missouri . . . . approved April 17, 1911, was in full force and effect in St. Louis County, Missouri, and all the roads and streets within the limits of the plaintiff city of Kirkwood, were for the purposes of the said act, general public county roads, including the roadway of Monroe avenue, mentioned in said petition; that St. Louis County, Missouri, long before, and at all the times mentioned in said petition, had an assessed valuation of fifty million dollars, or more, of taxable property, within said county, and said county adjoined the city of St. Louis, Missouri, which city had a population of 300,000, or more; that said St. Louis County Court did levy at said times mentioned in said petition and long prior thereto, a road and bridge tax, as described in section 3 of the Act, aforesaid, and had established the Special Road Fund in said section described, for the benefit of each municipal corporation in said county, within which such tax was levied, to be expended in the construction, or reconstruction of the roads and streets declared by said act to be general public roads within such municipal corporation; that said plaintiff, city of Kirkwood, was at all the times mentioned aforesaid, a municipal corporation within the meaning of said Act, in said county; that shortly after the passage of said

219 Mo. App.—32.

Act, the Collectors of the Revenue of said St. Louis county had in compliance with said Act, separately accounted for sixty-five per cent of such collection, made in the city of Kirkwood, and the County Treasurers of said county had likewise kept such sixty-five per cent of such collections of said road and bridge tax in a separate road fund for the benefit of the said city of Kirkwood; that the relator herein, J. N. Wilson, acting under the authority of the city of Kirkwood, as its duly appointed, qualified and acting engineer, in or about November, 1917, and thereafter caused the roadway, aforesaid, to be graded, macadamized, and otherwise improved, in accordance with plans, specifications and estimates prepared by him, keeping an accurate account of the cost of labor and material therefor; that said Wilson, on behalf of the city of Kirkwood, and under its authority, on or about May 10, 1918, submitted a written report showing an itemized account of the expenditures by said city of Kirkwood for teaming, labor and material used by him, in the above-mentioned construction of said roadway, on Monroe avenue, from North Railroad street to Woodlawn avenue, in said city, amounting in the aggregate to $965.44 to the County Highway Engineer of said county and demanded payment therefor to said city of county, then acting on behalf of the county court of said Kirkwood out of the Special Road Fund, aforesaid, standing to its credit, with the County Treasurer; that thereupon said County Highway Engineer investigated the said account submitted, approved the same and certified it for presentation to the said county court for allowance and the issuance of a warrant on the County Treasurer, drawn against said Road Fund, in favor of said city of Kirkwood, which certified account was filed on May 20, 1918, with the clerk of said court, of said city, and on the same day presented to said court for allowance, was duly allowed by it and ordered paid to, and charged to the city of Kirkwood, against said Special Road Fund, and thereupon a warrant duly signed by the

presiding judge of the county court, in favor of said city of Kirkwood on the said County Treasurer, against said fund, was duly drawn on and delivered to the said City Treasurer, who thereupon issued his check to the city of Kirkwood, which was collected by the Treasurer of said city and the moneys paid into the treasury of the city, for said sum of $965.44, thus paying said city of Kirkwood out of said Road Fund for its expenditures aforesaid on the said roadway.

"Thereafter, on or about July 1, 1918, Joseph N. Wilson, City· Engineer, in like manner submitted a report showing an itemized account of additional expenditures of said city of Kirkwood, for macadam, gravel, teaming and labor on said Monroe avenue roadway construction, amounting in the aggregate to $271.70, to said County Highway Engineer, duly acting on behalf of the county court, and demanded payment therefor to said city of Kirkwood out of said special road fund; that said engineer investigated said account, approved it, and certified it for presentation to the said county court for al-· lowance, and thereupon a warrant, duly signed by the presiding Justice of said court, was drawn in favor of the city of Kirkwood against said road fund on the County Treasurer, and delivered to him, who issued his check to the city of Kirkwood, which was collected by its Treasurer and paid into the City Treasury for the sum of $271.70, thus paying the city of Kirkwood, out of said road fund, a total, on account of its said expenditure, in the sum of $1,236.84.

"That thereafter, on October 2, 1918, said City Engineer aforesaid, submitted a report, in writing, to the Honorable Mayor and Board of Aldermen of said city of Kirkwood, of the aforesaid identical expenditures on said Monroe avenue improvement . . . in which he apportioned the said total cost of said expenditures in said report, to-wit $1,315.86 against the property abutting on the said improvement.

"That thereafter, said Board of Aldermen, on October 16, 1918, duly passed and said Mayor duly approved

an ordinance of said city, purporting to levy a special assessment to pay for the improving of the said roadway of Monroe avenue, from Woodlawn avenue to North Railroad street, in the city of Kirkwood, and authorizing the issuance of special tax bills therefor.

"That thereafter the city clerk of said city made out the two (2) certified tax bills, each in the sum of $209.18, against the property of the defendant, described in the petition, which are the originals of the so-called tax bills, certified copies of which respectively styled 'Exhibit A' and 'Exhibit B,' in the first and second counts of the petition, and filed therewith this action in this court.

"Defendants state that said Mayor and Board of Aldermen (and all interested officials), well knew that said city of Kirkwood had been paid for all its said expenditures.

"Defendants further answering, state that by reason of the recourse of said city of Kirkwood to said special road fund, an estoppel arose in favor of said defendants, and against the city of Kirkwood, to which fund as taxpayers they had annually, for many years, contributed their annual proportion of taxes, which constituted said special road fund, which prevents said city from claiming payment a second time, under said pretended and void tax bills, after having in fact claimed and collected the said expenditures from said special road fund, long prior to the date of the ordinance No. 1709, in the petition mentioned; that for the same reason said ordinance was itself null and void, there being no authority in law for its enactment.

"Further answering, defendants state that under the facts alleged herein, the said city of Kirkwood elected to obtain, and did obtain, full payment for its said expenditures for said improvement from said road fund, and said election is a bar to any right of said city to proceed by assessment and levy of a special tax and the issuance of special tax bills, to collect said expenditures from the defendants' property."

Defendants then pray for cancellation of the tax bills.

The reply is a general denial.

The learned trial judge treated this cause as one in equity and found the issues for the defendants and cancelled the special tax bills. The trial judge also filed a memorandum holding, in substance, that the improvement of Monroe avenue was done by the city of Kirkwood and that subsequently such city was paid for this improvement by St. Louis county under the Act of 1911, and having thus been reimbursed for its outlay, plaintiff could not recover a second time from the abutting property.

It is said by counsel that no reported cases are found in which this same question has been discussed, either in this or in any other jurisdiction, and our investigation has brought us to no such authority. This, it will be seen, grows out of the peculiar law applicable to road improvements in cities of St. Louis County, Missouri.

The sole assignment of error is to the effect that under the law and the evidence, judgment should have been for plaintiff. This improvement was begun in 1917, when section 9411, Revised Statutes 1909, as amended by the Laws of 1917, page 384, was in effect. That section, as amended, is now section 8510, Revised Statutes 1919. Section 8510 provides that when upon proper advertisement no bid is received, the Board of Aldermen (cities of fourth class) may proceed as provided in section 8514, Revised Statutes 1919. This later section is as follows:

"Whenever the city shall advertise for bids for the construction of any new sidewalk . . . or whenever the city shall advertise for bids for paving, macadamizing, guttering, curbing, or otherwise improving any street, avenue, alley or other highway or any part thereof, and shall receive no bids therefor, the city may proceed to construct or reconstruct any such sidewalk . . . or otherwise improve any street at its own expense, and shall keep an accurate account of the amount

expended for labor and material, including grading and filling, opposite each lot or piece of ground, and present the same to the Board of Aldermen for assessment, and each lot or piece of ground abutting on the sidewalk, constructed or reconstructed, or other street improvements made, shall be liable for the costs thereof, as reported to the Board of Aldermen by the officer or committee having charge of the matter, and special tax bills shall be issued for the amount thereof, and such tax bills shall be as valid in all respects whatever as the other special tax bills provided for in this article, and shall be collected in the same way.''

Under this section, the plaintiff purported to carry on the work, and under its taxation power, to issue these tax bills.   However, certain laws which are peculiarly applicable to counties such as is St. Louis county, come directly into play.   The Act of April 17, 1911, Laws of Missouri, page 362, creates a special road and bridge fund (sections 10755 to 10766, inclusive, Revised Statutes 1919), and provides in section 10756 that the ''corporate roads and streets within the limits of municipal corporations in said counties shall, for the purpose of this act only, be deemed general public county roads.''   In section 10757 it is provided that a special road fund of not less than sixty-five per cent of the taxes levied and collected for road and bridge purposes on the real and personal property within all municipal corporations in such county, as a special road fund for the benefit of each municipal corporation shall be set apart and such fund ''shall be expended solely in the construction or reconstruction of the roads and streets declared by this act to be general public roads within such municipal corporations.''   Under these laws, municipal corporations within St. Louis county could and did improve their roads in the municipality and the county court of St. Louis county, pursuant to such law, allowed the claim for its cost to be paid out of this special road fund for the improvement as a general public road under the statute.

We have set out the lengthy answer so that we need not again repeat the different steps taken which eventuated in the issuance of these tax bills. Suffice to say again that the improvement was begun by a *modus operandi* to lead to the special assessment against the abutting property. There were no bids received for doing the work, and then the city, by ordinance, provided that the work should be done "at its own expense," and directed the City Engineer to do the work and keep an accurate account of the cost of the improvement. The work was carried on with certain city funds then available. When the work was completed, the City Engineer presented a statement to the St. Louis County Highway Engineer describing the work done on Monroe avenue and itemized its cost. This was certified by the City Engineer to be a correct statement, and a request was made of that officer to approve it and to present same to the St. Louis County Court and to have same allowed to the city of Kirkwood by that court out of the fund known as the special road and bridge fund under the control of the county court and standing to the credit of the city of Kirkwood on the account books of said fund kept by the County Highway Engineer under the authority of said county court, created and existing by virtue of the Act of 1911, Laws of Missouri, p. 362. The statement was allowed by the court, and a warrant on the County Treasurer was issued and paid to the plaintiff, which was duly collected by plaintiff and deposited in its general fund as a part of the city revenue and was used for the ordinary expenditures of the city. The sum was charged against the city of Kirkwood by the County Highway Engineer in the account of the said road fund kept by him by authority of the county court.

The legal battle, then, is drawn on these lines: The city of Kirkwood contends that the road was constructed out of the available funds which the city temporarily used for that purpose, and that it was not done "at its

own expense;'' that this money so obtained from the county road fund was, in effect a loan, and the city, notwithstanding the fact that it did the work out of the road fund to its credit in the county funds, may nevertheless now cause this improvement to be paid for by special assessment.

The defendants, on the other hand, insist that these funds were collected for the special purpose and the county court could apply such funds to road and bridge purposes only, and that since the county court under the Act of 1911 at the demand of the city of Kirkwood paid for this construction on Monroe avenue in full to the city as a general public road out of the special road fund in the County Treasury, and since the city accepted such payment in full satisfaction of its expenditures out of its general revenue, it was therefore in law helpless to enact a valid ordinance and issue special tax bills to collect said expenditures a second time.

We have reached the view that the defendants' position is correct. Proceedings whereby private property is burdened with the cost of street improvements must conform strictly to law. Furthermore, that the county court can apply such fund only to road and bridge purposes is perfectly obvious. [Carthage Special Road Dist. v. Ross, 270 Mo. 76, 192 S. W. 976.] What in fact occurred, as we understand it, is that the city of Kirkwood did this work exactly as a contractor would have done it, and was paid for such work out of a fund from which a contractor would have been paid had there been a literal compliance of the law in a case for payment out of such a fund. If the contractor had been paid out of this county fund and thus deprived the city of again levying special assessments for the second payment, then the city is precluded in exactly the same manner in this case. It chose to so receive pay for the improvement, and it must be held thereto.

The city had its election either to pay for the work out of the road fund or to make special assessments

therefor. An election, in its legal sense, is defined to be a choice of the rights of one of two things, to each one of which the party choosing has a right, but both of which he cannot have. But it cannot be doubted that when the party obtains full satisfaction from one source, his cause of action ends and he cannot assert it further. [20 Corpus Juris, p. 5.] There are other principles of waiver and estoppel which would bar the city from collecting on these special tax bills, which we need not discuss.

We do not share the view of appellant that the city in this case temporarily borrowed this money from another fund, or that the city sought a temporary fund to carry the burden of the outlay until collection of the tax bills could be made. As we understand this case, the city having made this improvement at its own expense from the general revenue fund, and the city having been paid by the county court out of a special revenue fund existing by virtue of the Act of 1911, no further action lies against the property holders on a special assessment.

In the brief of counsel for the city of Kirkwood, it is strongly argued that where the tax-bill method is followed the statute mandate is that the expense of the improvement "shall be levied as a special assessment," and, furthermore, that the words "at its own expense," as used in section 8514 of the statutes, should be given the latitudinous construction to mean that the city may use any fund available, even from the road fund from the county depository, and then thereafter tax the costs against the property owners. We think this does not avail. The trouble is, that while the city started on a plan leading to a special tax assessment, it abandoned that plan and placed the improvement squarely in the field of payment out of the road fund and it consummated the work that way, and the city cannot now go back to the special assessment plan. Judgment affirmed. *Becker* and *Nipper, JJ.,* concur.